LAVERNIA LUMBER CO. v. PIKOS.

(Court of Civil Appeals of Texas. Feb. 22, 1911. Rehearing Denied March 22, 1911.)

PRINCIPAL AND AGENT (§ 164*)—RATIFICATION.

Where M., in fulfillment of his contract with defendant to furnish her lumber with which to build a house, purchased lumber on his own account of plaintiff, and furnished it to defendant, there was no acting by M. as agent of defendant, of which her receiving and use of the lumber would be a ratification, so as to make her liable to plaintiff for the lumber.

[Ed. Note.—For other cases, see Principal and Agent, Dec. Dig. § 164.*]

Appeal from Wilson County Court; H. B. Gouger, Judge.

Action by the Lavernia Lumber Company against Mrs. Frank Pikos. Judgment for defendant. Plaintiff appeals. Affirmed.

Canfield & King, for appellant. Morris & Haskell and Wiseman Bros., for appellee.

JAMES, C. J. The petition was upon a sworn account for a bill of lumber alleged to have been sold by the Lavernia Lumber Company to Mrs. Pikos. There was a sworn denial.

The testimony introduced by plaintiff was clear, to the effect that Mrs. Pikos was the purchaser of the lumber. The testimony introduced by defendant, through herself and several witnesses, was to the effect that W. L. McDaniel was indebted to Mrs. Pikos for certain land he had purchased from her; that she had purchased another place upon which to make her home, and would not deliver to McDaniel the place she sold him unless he furnished her lumber with which to build her a new house on the land she had acquired, the amount thereof to be credited on his purchase-money notes to her. In pursuance of this McDaniel made the following transaction with Mr. Suhre, the manager of plaintiff's business, as related by one of the persons present: "A short time afterward Mrs. Pikos, John Winkler, and myself went to the office of the Lavernia Lumber Company. We found Mr. McDaniel there talking to Mr. Suhre. I heard Mr. McDaniel make the trade with Mr. Suhre for the lumber. I heard Mr. McDaniel tell Mr.

Suhre that he would pay for the lumber in 60 days. I also heard Mr. McDaniel tell Mr. Suhre that he owed Mrs. Pikos some notes, and that he was going to take up one of the notes in 60 days, and that he would keep enough money out of this note to pay him, the said Suhre, for the lumber. McDaniel further stated to the said Suhre in my presence that in the event he did not take up the Pikos note within 60 days that he, the said McDaniel, held an onion crop that would be ready for market at about the time the debt would become due, and that he would pay the said Suhre for the lumber out of the proceeds from the sale of the onions. Mr. Suhre then told Mr. McDaniel that he had to have $50 down on the lumber. Mr. McDaniel told him he did not have any money. McDaniel then turned to Mrs. Pikos and asked her if she had any money. She told him she had $50, but that she wanted to use that money to pay the carpenters. McDaniel then told her to lend him the $50, whereupon she paid Mr. McDaniel the $50, and in turn Mr. Mc-Daniel paid Mr. Suhre, or the Lavernia Lumber Company. * * * Mrs. Pikos did not buy the lumber, nor did she promise to pay for the same."

Winkler's testimony was substantially to the same effect; also that of Mrs. Pikos. She testified further: "McDaniel then told me that if I would give possession of the property that he would buy the lumber with which to build the house. * * * I heard Mr. McDaniel contract for the lumber, and heard him promise to pay for the same. I never bought any lumber from the Lavernia Lumber Company with which to build the house, nor did I ever promise to pay for any. * * * The house would not have been built if McDaniel had not agreed to furnish and pay for the lumber. I would not have gone in debt to build the house. * * * McDaniel got the money from me to pay the cash. He never paid me back."

The trial judge found as facts that Mc-Daniel purchased the lumber, and that Mrs. Pikos did not purchase it, nor agree to pay for the same; that the debt created in the purchase of the lumber was not an obligation wherein defendant was in any way or manner liable; that the lumber was used by her in erecting a house on her land, in which land McDaniel had no interest; and that when McDaniel purchased the lumber from plaintiff he owed defendant, for land she had sold him, the sum of $2,000; and concluded as a matter of law that no part of the debt sued for was defendant's, and she was not liable therefor.

It is manifest that the trial judge did not accept the testimony of plaintiff, and gave credence to that introduced by the defendant. The view taken, as indicated by his findings, is inconsistent with the existence

of the relation of principal and agent between McDaniel and Mrs. Pikos in the purchase of this lumber. McDaniel purchased on his own account, in the fulfillment of his contract with Mrs. Pikos to furnish her lumber with which to build a house. He was acting for himself in making the purchase. The propositions upon which appellant seeks to reverse the judgment, are all based on the theory of ratification of what McDaniel did by Mrs. Pikos, because of her receiving and using the lumber purchased by McDaniel. Certainly McDaniel did not buy the lumber in the capacity of agent of Mrs. Pikos, if he bought it to perform his contract with her; and Mrs. Pikos, by receiving and using the lumber he bought under such circumstances, did not become liable for it under any doctrine of ratification. This rule is clearly stated in Sheer v. Cummings, 80 Tex. 294, 16 S. W. 37, in this expression: "The evidence shows that Jane Cummings contracted on her own account, and not as agent of her son, and therefore there was no acting as his agent for him to ratify by appropriating the benefit of the contract to his own use."

The judgment is affirmed.